IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAREN L. FOREHAND,     :
             :
    Plaintiff,     :
             :  CIVIL ACTION NO.
  v.         :  1:05-CV-0658-JOF
             :
FULTON COUNTY, GA., et al.,   :
             :
    Defendants.    :

**OPINION AND ORDER**

This matter is before the court on Defendants' motion for summary judgment [33].

I. **BACKGROUND**

  A. **Procedural History**

On March 10, 2005, Plaintiff, Karen L. Forehand, an African-American female, brought an employment discrimination action against Defendants, Fulton County (hereinafter "Defendant Fulton County"), Thomas C. Andrews  (hereinafter "Defendant Andrews") in both his official and individual capacities, and Willie Hopkins (hereinafter "Defendant Hopkins") in both his official and individual capacities.  On June 30, 2006, Defendants filed a motion for summary judgment.  The matter was reviewed by Magistrate Judge Gerrilyn G. Brill, who issued a report and recommendation on November 28, 2006.  In that report and recommendation she advised that Defendants' motion for summary judgment be granted-in-

part and denied-in-part.   On December 15, 2006, Plaintiff filed her objections to Magistrate Judge Brill's report and recommendation.     On December 18, 2006, Magistrate Judge Brill submitted a document clarifying her report.    Plaintiff filed another set of objections in response to this clarification on January 3, 2007.

> **B.    Facts**

Plaintiff began employment with Defendant Fulton County in 1993 in the General Services Department ("Department") as a security manager, in which capacity she developed plans and operations for the County's security program.  (Forehand Dep. at 14, 16).  In 1995, Plaintiff was promoted to Assistant Director ("AD") for the Department's Operations Division, and she remained in that position during the rest of her tenure with the county. (Statement of Material Facts at 1-2).   As AD of the Operations Division, Plaintiff managed the division, which included planning policy, managing the division's budget, managing the division's employees, and managing the county's security program.   (Forehand Dep. at 19). During her employment with Defendant Fulton County, Plaintiff never received any warnings and had never been disciplined for her work performance.  (*Id.* at 28).

In early 2001, Bernard McMullen ("McMullen"), a Caucasian male, was named the Director of the Department and became Plaintiff's supervisor.   (Forehand Dep. at 30-31). Soon thereafter, McMullen created a Deputy Director position for the Department; the Deputy Director would, *inter alia*, act as a go-between between the Director and the ADs.  (*Id.* at 31-43).   Initially, McMullen named Dan McGarity ("McGarity"), a soon-to-be-retired AD,

as interim Deputy Director. (*See id.* at 34-43). On April 30, 2001, Plaintiff filed an internal grievance regarding McGarity's appointment as Deputy Director, complaining that McMullen had not advertised the newly-created position and that McGarity was not qualified for the position. (*Id.* at 50; *see id.* at 36-49). Prior to a hearing on Plaintiff's grievance, her grievance was resolved when McGarity was removed and the position was advertised. (*Id.* at 55, 60).

Plaintiff, along with others, applied for the newly-created Deputy Director position and interviewed for the position with McMullen and Assistant County Manager Ruth Jones, an African-American female. (*Id.* at 60-65; Doc. 33, Statement of Material Facts at ¶ 11; Doc. 40 at ¶ 11). In February 2002, Carl Crass, a Caucasian male who was the AD for the Department's Engineering Division, was selected for the Deputy Director position. (Forehand Dep. at 31-32, 66; Doc. 33, Statement of Material Facts at ¶ 12; Doc. 40 at ¶ 12). Plaintiff spoke to McMullen about her belief that she was not fairly considered for the job, and McMullen replied that he thought he did give her fair consideration. (Forehand Dep. at 68-69).

Soon thereafter, on or about March 20, 2002, Plaintiff filed an internal grievance, alleging that McMullen's selection of Crass instead of Plaintiff for the Deputy Director position was done in retaliation for Plaintiff's prior grievance, as well as in retaliation for a separate internal mediation action that Plaintiff had previously asserted. (*See* Forehand Dep. at 72, Exh. 2). The grievance board held a hearing and upheld Crass' selection. (*Id.* at 70-71).

3

According to Plaintiff, the grievance board told her that McMullen "could do whatever he wanted" because the Deputy Director position was an "unclassified position." (*Id.*).

On May 2, 2002, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was not promoted to Deputy Director on account of her race and gender and in retaliation for "protesting acts made unlawful under Title VII . . . ." (*Id.* at Exh. 3). On December 10, 2002, the EEOC mailed Plaintiff a "Dismissal and Notice of Rights," informing her, inter alia, of her right to sue and the requirement that her lawsuit be filed within 90 days of receiving her notice of rights. (*Id.* at Exh. 4). Plaintiff took no further action regarding her May 2002 EEOC charge. (*See id.* at 131).

After Crass became the Deputy Director, all of the ADs, including Plaintiff, reported to Crass. (*Id.* at 33). By 2003, the Department operated with a Director, a Deputy Director, and seven ADs — two African-American females and five Caucasian males. (Hopkins Dep. at 77, 119-20; Doc. 33, Statement of Material Facts at ¶ 19; Doc. 40 at ¶ 19). In 2003, McMullen left his position as Director. (See *id.* at 33).

Fulton County's Personnel Department advertised the Director position. The Personnel Department received applications and resumes and ranked the applicants. (Andrews Dep. at 15-18). The Personnel Department then forwarded the resumes from the applicants it ranked as "highly qualified" to Thomas C. Andrews, the County Manager. (*Id.*). Defendant Andrews and Terry Todd, one of Defendant Andrews' Deputy County Managers, interviewed

4

several candidates, including Willie Hopkins, an African-American male, and all internal applicants, including Plaintiff.   (*Id.* at 19-23).   All internal candidates were interviewed regardless of their ranking.   (*Id.* at 23).   Given Hopkins' education, background, and experience (including experience managing large organizations), Defendant Andrews felt that Defendant Hopkins was the most qualified candidate of all the people he had interviewed.   (*Id.* at 39-40).

Defendant Andrews hired Defendant Hopkins as the new Director in August 2003. (Andrews Dep. at 39; Hopkins Dep. at 15, 94-104).   For six months after assuming the Director position, Defendant Hopkins observed and assessed his staff.   (*See id.* at 76-77, 114, 116-17).   After assessing the department, Defendant Hopkins decided to reorganize the department and consolidate functions.   (*Id.* at 121-22, 138).   As part of his reorganization plan, Defendant Hopkins wanted to decrease the number of ADs within the department.   (*Id.* at 123, 138).

After assessing his staff, Defendant Hopkins determined that he wanted to terminate those five ADs (of seven) whom he felt did not meet his standards.   (*Id.* at 118, 123).   The two ADs whom Defendant Hopkins wanted to retain were Michael Katsin and John Lavelle, both Caucasian males.   (*Id.* at 121, 123).   The five ADs whom Defendant Hopkins wanted to terminate were Plaintiff, an African-American female; Keith Troutman ("Troutman"), a Caucasian male; Delta Collier ("Collier"), an African-American female; Jess Jessup ("Jessup"), a Caucasian male; and Gayland Osten ("Osten"), a Caucasian male.   (*Id.*).   Soon

5

after Defendant Hopkins talked to Collier and Jessup about his expectations for the Department, Collier's and Jessup's performance were deemed to have improved, and they were retained by the Department. (*Id.* at 132, 134, 139-40, 158, 169-70). Troutman and Osten resigned. (*Id.* at 134, 136-37).

According to Defendant Hopkins, Plaintiff's work performance did not improve after he spoke to her about his concerns as to her performance. (*See id.* at 158-64, 169-70). Among Defendant Hopkins' complaints regarding Plaintiff were that he could not find her when he was looking for her; she came to work late; she was heavily involved in physical security for the Fulton County buildings, which was not a responsibility of the Department; and she was "somewhat belligerent" and "negative" toward Defendant Hopkins' new ideas for the Department. (*Id.* at 158-59, 164, 166-68, 170-71).

Additionally, Defendant Hopkins was aware that Plaintiff had previously complained of discrimination. (*See id.* at 202-03, 213-15). From January through June 2004, Defendant Hopkins told Plaintiff on numerous occasions that her previous complaints of discrimination, including her EEOC charge, "had a negative impact on [her] continuing to work in the department because the senior staff, meaning the commission staff on the tenth floor [including Defendant Andrews and Commissioner Edwards], were still angry about those charges." (Forehand Dep. at 136-40).

In February or March 2004, after Defendant Hopkins had told Plaintiff that her prior complaints had a negative impact on her possibility for future employment with the

6

Department, Plaintiff talked to Deputy Chief Chip McCarthy of the Fulton County Police Department about transferring to the police department. (*Id.* at 144-47). Plaintiff also talked to Defendant Hopkins about the possibility of transferring. (*Id.* at 145; *see* Hopkins Dep. at 162-63). Defendant Hopkins responded that "he didn't know because he thought the pervasive feeling was that [Plaintiff] had too much baggage to go to another department . . . ." (Forehand Dep. at 145). Plaintiff again talked to Defendant Hopkins in June 2004 about transferring to another department within the County, and Defendant Hopkins said that he would let her know. (*Id.* at 148). In October 2004, Defendant Hopkins talked to Plaintiff, denied her requests for a transfer, and told her that he did not think that he had a place for her in the soon-to-be-reorganized Department because of her previous complaints about discrimination. (*Id.* at 148-49). He also told her that, as part of the reorganization, he was going to split her position into two new positions. (*Id.* at 149).

Plaintiff's performance appraisal of her work performance from July 1, 2003 through June 30, 2004, which was signed by both Crass and Defendant Hopkins, indicated that her overall performance rating was "outstanding." (Hopkins Dep. at 164-65, 192-94, Exh. 3). She received a rating of "outstanding" on all of her responsibility areas except for the "Leadership and Management" and "Assistant Director/Manager Goals" areas, in which she received "acceptable" ratings. (*Id.*, Exh. 3 at 2).

After giving Plaintiff the opportunity to resign, Defendant Hopkins terminated Plaintiff on October 14, 2004. (*Id.* at 265-66, 285-86, Exh. 6; Forehand Dep. at 134). According to

Defendant Hopkins, he terminated Plaintiff for the following reasons:   (1) given the reorganization, he did not need Plaintiff's position; (2) Plaintiff complained too much and had poor people skills; and (3) he wanted employees who were more aggressive and proactive than Plaintiff.  (*See* Hopkins Dep. at 210-12, 215-16, 282-83).   Defendant Hopkins had the sole authority to make decisions regarding the hiring and firing of personnel in the Department. (*Id.* at 112-13)  No one approved his decision to terminate Plaintiff.  (*Id.* at 113).

After Plaintiff's termination, Defendant Hopkins changed the title of Plaintiff's position to either "Greater Fulton Manager" or "Central Fulton Manager."   (During his deposition, Defendant Hopkins could not remember which of these titles was the one.) Those two positions were filled by Michael Ross and Andrew Stokes, both males.   (*Id.* at 187-89, 241).  Plaintiff's termination was not the result of a reduction in force.  (*Id.* at 238-39).

On February 22, 2005, after her termination, Plaintiff filed a second charge of discrimination with the EEOC.  (Forehand Dep. at 133, Exh. 5).  She amended that charge on March 10, 2005.  (Forehand Dep., Exh. 6).  In her EEOC charge, Plaintiff indicated that she had been wrongfully terminated on account of her sex and race and in retaliation for filing her prior EEOC charge.  (*Id.* at 135-36, Exh. 6).  She stated that she checked discrimination based on "race" and "sex" on the form because the retaliatory employment actions taken against her were based on her prior charges of race and sex discrimination.  (*Id.* at 159-60).

### C.    Magistrate Judge Brill's Report and Recommendation

1.      **Plaintiff's Race and Gender Discrimination Claims Regarding
Her Termination; Plaintiff's Race Discrimination Claim
Regarding Her Failure to Receive a Promotion**

Magistrate Judge Brill's report starts by noting that in Plaintiff's response to the

Defendants' motion for summary judgment, Plaintiff states that she "does not oppose

Defendants' motion [for summary judgment] with regard to her race and gender claims

pertaining to her termination or her race claim with regard to her promotion."   Pltf. Res. to

Def. Mot. for Summary Judgment at 3 n.1.   Therefore, the report recommends that this court

grant the Defendants' motion for summary judgment insofar as it pertains to those claims.

The report states that Plaintiff's only remaining claims are for (1) retaliatory termination, (2)

retaliatory failure to promote, (3) failure to promote on the basis of gender, and (4) transfer

denial on the basis of gender.

2.      **Retaliatory Termination**

a.      **Title VII**

As an initial matter, to the extent that Plaintiff is raising a Title VII claim against

Defendant Andrews and Defendant Hopkins in their individual capacities, the report advises

that this court grant summary judgment to Defendants.   The report makes such a

recommendation relying on *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991),

which states that individual capacity suits under Title VII are inappropriate.

The report next analyzes Plaintiff's retaliatory termination claim under Title VII against

Defendant Fulton and against Defendant Andrews and Defendant Hopkins in their official

AO 72A
(Rev.8/82)

capacities. "To establish a prima facie showing of retaliation under Title VII, 'the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events.'" *Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)). The report finds that Plaintiff has satisfied all three elements necessary to establish a prima facie case showing retaliatory termination.

The report notes that after Plaintiff has established a prima facie case of retaliation, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *See Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 701-02 (11th Cir. 1998). The report finds that Defendants have articulated such a reason. Namely, Defendants contend that Defendant "Hopkins made his decision [to terminate Plaintiff] based on his assessment that [Plaintiff's] management style and her demeanor and attitude were not consistent with his vision for the Department and his intent to make change within the Department." (Doc. 33, Supporting Brief at 20; *see also* Hopkins Dep. at 210-12, 215-16, 282-83 (according to Hopkins, he terminated Plaintiff for the following reasons: (1) given the reorganization, he did not need Plaintiff's position; (2) Plaintiff complained too much and had poor people skills; and (3) he wanted employees who were more aggressive and proactive than Plaintiff)).

10

Finding that Defendants had satisfied their burden, the report notes that the onus now shifted back to Plaintiff to raise a genuine factual issue as to whether that proffered reason is merely a "pretextual ruse to mask a retaliatory action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997). Magistrate Judge Brill finds that Plaintiff has proffered enough evidence to raise a genuine factual issue as to whether the proffered reasons for her termination were pretextual. Specifically, the report relies on Plaintiff's allegations that Defendant Hopkins told her that her previous complaints of discrimination negatively impacted her future in the Department. Further, the fact that Plaintiff had never received any warnings or been disciplined for her work performance and had received favorable performance ratings lends weight to Plaintiff's argument that Defendants' proffered reasons for her termination are pretextual. For all of these reasons, Magistrate Judge Brill recommends that this court deny Defendants' motion for summary judgment on Plaintiff's Title VII claim of retaliation against Defendant Fulton County and Defendant Andrews and Defendant Hopkins in their official capacities.

### b.    42 U.S.C. § 1983

Next, the report analyzed Plaintiff's 42 U.S.C. § 1983 claim with respect to her termination. The report notes that "[t]he Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). A county may not be liable under § 1983 based on the doctrine of *respondeat*

*superior*; rather, "a county is liable only when the county's 'official policy' causes a constitutional violation." *Id.*

Here, the report found that it is uncontested that Plaintiff has not identified an officially-adopted policy of Fulton County permitting retaliation against those employees who complain of discrimination and has not shown that the County has a custom or practice of permitting such retaliation. *See id.*

Nevertheless, the report found that Plaintiff may establish municipal liability under section 1983 by showing that the "decisionmaker" possessed final authority to establish municipal policy with respect to the unlawful action ordered. *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986). "The fact that a particular official — even a policymaking official — has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481-82. "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482- 83.

The report notes that even though Defendant Hopkins had the discretion to hire and fire employees, there is no evidence indicating that Defendant Hopkins was the County official responsible for establishing County employment policy. *See id.* at 484 n.12  The report found that Defendant Fulton County should not be held liable under section 1983 for the alleged retaliatory termination of Plaintiff.  Therefore, the report recommends that this court grant Defendants' motion for summary judgment insofar as it relates to Plaintiff's section 1983

12

retaliatory termination claims against Defendant Fulton County and Defendant Hopkins and Defendant Andrews in their official capacities.

With regard to Plaintiff's section 1983 retaliatory termination claim against Defendant Andrews in his individual capacity, the report found that the record clearly indicates that Defendant Hopkins, alone and without Defendant Andrews' approval, made the decision to terminate Plaintiff.  (*See* Hopkins Dep. at 112-13).   Accordingly, Magistrate Judge Brill recommends that this court grant summary judgment in favor of Defendant Andrews in his individual capacity on Plaintiff's section 1983 claim of retaliatory termination.

Finally, the report finds that Defendant Hopkins, in his individual capacity, is entitled to qualified immunity on the section 1983 retaliatory termination claim against him.   Because Defendant Hopkins was acting within the scope of his discretionary authority when the allegedly wrongful act occurred, the report's inquiry proceeds to the issue of whether Defendant Hopkins' retaliatory termination of Plaintiff, if true, violated any constitutional right.  *Wilson v. Farley*, 2006 WL 2578200 at *8 (11th Cir. Sept. 8, 2006).   Relying on Eleventh Circuit case law, the report found that, in the context of section 1983 Equal Protection Clause retaliation claims, there is no constitutional right to be free from retaliation.   Therefore, the report finds that Defendant Hopkins' retaliatory termination did not violate any constitutional right.   For these reasons, Magistrate Judge Brill recommends that the court grant summary judgment on qualified immunity grounds in favor of Defendant Hopkins on the section 1983 retaliatory termination claim against him.

13

In her clarification of the report and recommendation issued after Plaintiff filed her objections, Magistrate Judge Brill notes that she did not include an analysis of section 1981 retaliatory termination because under her reading of Count Seven of Plaintiff's complaint, the only count which referred to retaliation and section 1981, Plaintiff failed to state a claim of retaliatory termination. Magistrate Judge Brill finds that Count Seven only asserts a claim for retaliatory failure to promote.

### 3.   Retaliatory Failure to Promote and Failure to Promote on the Basis of Gender

#### a.   Deputy Director position

Defendants argue that Plaintiff's claims regarding her non-selection for the Deputy Director position in February 2002 are time-barred. In her response, Plaintiff does not address Defendants' summary judgment arguments regarding her non-selection for the Deputy Director position.

Magistrate Judge Brill finds that Plaintiff's Title VII claim relating to the Deputy Director position is time-barred because she did not file a lawsuit within 90 days of receiving notice of her right to sue from the EEOC. *See Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (11th Cir. 2002) (affirming the grant of summary judgment to the employer where plaintiff failed to satisfy his burden of establishing that he filed suit within 90 days of receiving his right-to-sue letter from the EEOC). Further, she finds that Plaintiff's section 1983 claim relating to her failure to receive a promotion to Deputy Director is time-barred

14

as the instant lawsuit was not commenced within the applicable two-year statute of limitations. *See Thigpen v. Bibb County*, 223 F.3d 1231, 1243 (11th Cir. 2000) ("The statute of limitations for a section 1983 claim arising out of events occurring in Georgia is two years"), abrogated on other grounds by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

With regard to Plaintiff's section 1981 claim relating to her failure to receive a promotion to Deputy Director, Magistrate Judge Brill finds that this claim is also time-barred. Because failure to promote claims under section 1981 were cognizable before Congress' 1991 expansion of section 1981, they are subject to the most analogous state statute of limitations. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 176-77, 185 (1989); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987); *accord Hithon v. Tyson Foods, Inc.*, 144 Fed. Appx. 795, 798 (11th Cir. 2005) (unreported). The Georgia statute of limitations for claims under section 1981 is two years for claims seeking monetary damages and 20 years for claims for equitable relief. *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1350 (11th Cir. 1983). As Plaintiff does not indicate that she seeks equitable relief regarding her failure to receive a promotion to Deputy Director, the report finds that a two-year statute of limitations applies. Because Plaintiff did not file the instant lawsuit within two years of her failure to receive the promotion, the report recommends a finding that Plaintiff's section 1981 claim relating to her failure to receive a promotion to Deputy Director is time-barred.

### b.    Director position

#### i.    Title VII

15

Magistrate Brill, in her report and recommendation, also finds that Plaintiff's Title VII claims regarding her non-selection for the Director position in August 2003 are time-barred. Defendant Andrews hired Defendant Hopkins for the Director position in August 2003. (Andrews Dep. at 39; Hopkins Dep. at 15, 94-104). Plaintiff did not file her EEOC charge with respect to her non-selection for the Director position until February 22, 2005 (Forehand Dep. at 133, Exh. 5), well beyond the 180-day limitation period. *Pijnenburg v. West Georgia Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of [a Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred.")

### ii.        42 U.S.C. § 1981

The report notes that section 1981 claims may not apply to Defendant Fulton County or Defendant Andrews in his official capacity in that they are state actors. *See Butts v. County of Volusia*, 222 F.3d 891, 892-94 (11th Cir. 2000) (finding that a § 1981 claim against a state actor must be brought under § 1983). Accordingly, Magistrate Judge Brill recommends that the court grant Defendants' Motion for Summary Judgment insofar as it concerns Plaintiff's section 1981 failure to promote to Director claims against Defendant Fulton County and Defendant Andrews in his official capacity. Thus, the only proper

16

Defendant of Plaintiff's section 1981 failure to promote to Director claim is Defendant Andrews in his individual capacity.[1]

In her report and recommendation, Magistrate Judge Brill assumed *arguendo* that Plaintiff established a prima facie case of retaliatory failure to promote and failure to promote on the basis of gender.   Nonetheless, the report still finds that Plaintiff's claim cannot survive summary judgment because she has not shown that Defendant Andrews' reasons for hiring Hopkins were pretextual.

In so finding, the report notes that in support of his decision to hire Defendant Hopkins for the Director position, Defendant Andrews asserted that he felt that Hopkins was the most qualified candidate of all the people he had interviewed because of  Hopkins' education, background, and experience, including experience managing large organizations. (Andrews Dep. at 39-40).

As Defendant Andrews had articulated a legitimate, nondiscriminatory reason for hiring Defendant Hopkins, the report found that the burden shifted to Plaintiff to show that this reason was a pretext for a discriminatory reason.   In the case of failure to promote, to establish pretext Plaintiff would have to establish that the disparities in qualifications are of "such weight and significance that no reasonable person, in the exercise of impartial judgment,

---

[1] As Defendants fail to argue in their motion for summary judgment that Defendant Andrews is entitled to the defense of qualified immunity regarding Plaintiff's section 1981 failure to promote claim, Magistrate Judge Brill did not address whether Defendant Andrews is entitled to qualified immunity on Plaintiff's section 1981 failure to promote claim.

AO 72A
(Rev.8/82)

could have chosen [Defendant Hopkins] over [Plaintiff] for the job in question." *Cooper*, 390 F.3d at 732 (internal quotations and citation omitted).   In looking at the respective qualifications of Defendant Andrews and Plaintiff, Magistrate Judge Brill's report found that Plaintiff has not established pretext.   Therefore, the report recommends that the court grant Defendants' Motion for Summary Judgment insofar as it pertains to Plaintiff's section 1981 failure to promote to Director claim against Andrews in his individual capacity.

**iii.    42 U.S.C. § 1983**

Moreover, the report finds that because Plaintiff failed to establish that the reason for hiring Defendant Hopkins was pretext for discrimination or retaliation, Plaintiff's section 1983 failure to promote to Director claims fail as well.[2]   *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001) ("[C]laims under § 1983 and Title VII generally have the same elements of proof and use the same analytical framework . . . ."). Therefore, Magistrate Judge Brill recommends that this court grant the Defendants' Motion for Summary Judgment insofar as it pertains to Plaintiff's claims of retaliatory failure to promote and failure to promote on the basis of gender.

**4.    Transfer Denials on the Basis of Gender**

---

[2] Because the report found that Plaintiff's section 1983 failure to promote to Director claims fail on "pretext" grounds, Magistrate Judge Brill noted that the court need not address the County's municipal liability or Andrews' entitlement to qualified immunity.

18

The report finds that Plaintiff, in Count Five of her amended complaint, alleges that Defendant Hopkins "continuously engaged in a pattern and practice of intentional gender discrimination by denying the Plaintiff transfers . . . in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Constitution of the United States."  (Doc. 23 at ¶ 75).   The report assumes that the transfer denials of which Plaintiff complains relate to the conversations between Plaintiff and Defendant Hopkins about the possibility of her receiving a lateral transfer to the Fulton County Police Department or another department within Fulton County.  (Forehand Dep. at 144-49; Hopkins Dep. at 162-63).   The report notes that in their motion for summary judgment, Defendants do not address this "transfer denial" portion of Count Five.  (*See* Doc. 33, Brief in Support; Doc. 60 (Defendants' reply brief)).

Nonetheless, the report finds that a denial of a purely lateral transfer is not an adverse employment action and, thus, cannot support a prima facie case of gender discrimination. *Doe. v. DeKalb County Sch. Dist.*, 145 F.3d 1441, 1449-51 (11th Cir. 1998); *see also Jones v. District of Columbia Dep't of Corr.*, 429 F.3d 276, 284 (D.C. Cir. 2005); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283-84 (5th Cir. 2004); *LePique v. Hove*, 217 F.3d 1012, 1014 (8th Cir. 2000); *Smith v. Alabama Dep't of Corr.*, 145 F. Supp.2d 1291, 1297-98 (M.D. Ala. 2001).   After finding that the law is clear that the denial of a lateral transfer cannot support a prima facie case of gender discrimination, the report recommends that the court, *sua sponte*, grant summary judgment in favor of Defendants on Plaintiff's claim that Defendant Hopkins denied Plaintiff's requests for transfers on the basis of her gender.

19

### D.      Objections

Plaintiff objects to Magistrate Judge Brill's report and recommendation and her clarification thereof on several grounds. First, Plaintiff contends that Magistrate Judge Brill erred in finding that Plaintiff failed to raise a claim of retaliatory termination under section 1981. Plaintiff contends that had Magistrate Judge Brill addressed this claim it would survive summary judgment. Moreover, Plaintiff contends that Magistrate Judge Brill erred in concluding that Defendant Hopkins was entitled to qualified immunity on Plaintiff's section 1983 claim for retaliatory termination. Plaintiff contends that Magistrate Judge Brill erred in concluding that Plaintiff did not provide direct evidence of retaliation. Finally, Plaintiff argues that Magistrate Judge Brill erred in finding that Defendants Fulton County and Defendant Andrews proffered a legitimate, non-discriminatory reason for the failure to promote Plaintiff to Director.

Defendants have not filed any objections to Magistrate Judge Brill's report and recommendation.

## II.    DISCUSSION

### A.     Findings of the Report and Recommendation to which there are no Objections

Because Plaintiff states that she "does not oppose Defendants' motion [for summary judgment] with regard to her race and gender claims pertaining to her termination or her race claim with regard to her promotion," Pltf. Res. to Def. Mot. for Summary Judgment at 3 n.1,

the court GRANTS the Defendants' motion for summary judgment insofar as it pertains to those claims.

With regard to Plaintiff's Title VII retaliatory termination claim, the court agrees with the analysis provided in the report and recommendation insofar as it deals with circumstantial evidence. The court finds that Plaintiff has raised a prima facie case of retaliation and has raised an issue of material fact as to whether the reasons offered by Defendants for Plaintiff's dismissal were pretext for a retaliatory motive. For these reasons the court ADOPTS the analysis of the report and recommendation and DENIES Defendants' motion for summary judgment with regard to Plaintiff's Title VII retaliatory termination claim.[3]

With regard to Plaintiff's section 1983 retaliatory termination claim, the court agrees with the report and recommendation's treatment of both Defendant Fulton County and Defendant Andrews. Therefore, the court ADOPTS the analysis of the report and recommendation and GRANTS Defendants' motion for summary judgment with regard to Plaintiff's section 1983 retaliatory termination claim against Defendant Fulton County and Defendant Andrews.

---

[3] Plaintiff contends Magistrate Judge Brill erred in failing to find that there is direct evidence that Defendant Hopkins caused her employment to be terminated in retaliation of her previous EEOC complaints. While the court finds some merit in Plaintiff's contention that she has shown direct evidence of discriminatory retaliation, the court finds the matter moot as the court has already denied Defendants' motion for summary judgment with regard to retaliatory termination based on circumstantial evidence of discrimination.

AO 72A
(Rev.8/82)

Moving on to Plaintiff's claims of retaliatory failure to promote and failure to promote on the basis of gender, the court agrees with Magistrate Judge Brill that Plaintiff's claims under Title VII and section 1981 for failure to promote Plaintiff to the deputy director position in February 2002, and Plaintiff's Title VII claim for failure to promote Plaintiff to the director position in August 2003 are barred by the applicable statutes of limitations. Moreover, the court agrees that Plaintiff is unable to assert a section 1981 claim for failure to promote Plaintiff to the director position against Defendant Fulton County and Defendant Andrews in his official capacity.   For these reasons the court ADOPTS the analysis of the report and recommendation and GRANTS Defendants' motion for summary judgment with regard to Plaintiff's claims under Title VII and section 1981 for failure to promote Plaintiff to the deputy director position, Plaintiff's Title VII claim for failure to promote Plaintiff to the director position, and Plaintiff's section 1981 claim for failure to promote Plaintiff to the director position against Defendant Fulton County and Defendant Andrews in his official capacity.

Finally, with regard to Plaintiff's claim against Defendant Hopkins for gender discrimination based on the denial of transfers, the court agrees with Magistrate Judge Brill's finding that Plaintiff failed to establish a prima facie case of discrimination. Therefore, the court ADOPTS the analysis of the report and recommendation and GRANTS summary judgment in favor of Defendants on Plaintiff's claim that Defendant Hopkins denied her transfers on the basis of her gender.

22

**B.      Retaliatory Termination - § 1981**

The first matter before the court concerns whether or not Plaintiff raised a section 1981 claim for retaliatory termination.   In her complaint, Plaintiff stated, "Defendants have engaged in intentional and unlawful race and gender discrimination and retaliation by denying Plaintiff promotions and by terminating her employment."   Cmplt. ¶ 49.   Later in the complaint, in Count Seven, the only count addressing section 1981 retaliation, Plaintiff incorporates all of the preceding paragraphs in the complaint and then states:

> Defendants have engaged in intentional retaliation in violation of 42 U.S.C. § 1981 by their failure to select the Plaintiff for promotion.   Defendants have engaged in intentional retaliation by treating the Plaintiff differently than similarly situated employees who have not complained of race discrimination in the terms and conditions of her employment, including but not limited to the Defendants' failure to select[] the Plaintiff for promotion.   Defendants' retaliatory conduct in violation of 42 U.S.C. § 1981 has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

Cmplt. ¶¶ 85-86.

Defendants were on notice of Plaintiff's section 1981 retaliatory termination claim as early as the filing of the joint preliminary report and discovery schedule.   In this document, when discussing the issues to be adjudicated by the court, Plaintiff specifically included the issue of "whether all Defendants retaliated against Plaintiff for terminating Plaintiff in violation of § 1981." [Doc. 10 at 5].   Further, in their motion for summary judgment Defendants state, "Plaintiff alleges that Defendants have retaliated against her under Title VII

23

and § 1981 by denying her promotions and terminating her for her complaints of discrimination in 2002." Def. Mot. for Summary Judgment at 23.

Defendants now contend that although they included in their summary judgment papers a brief argument regarding a claim of retaliatory termination under section 1981, such argument was made out of an abundance of caution to ensure that no argument was forfeited by Defendants. However, this contention is belied by the fact that nowhere in Defendants' motion for summary judgment or its supporting brief[s] did they contend that Plaintiff's complaint does not state a claim for retaliatory termination.

A broad reading of Count Seven in conjunction with the statement in paragraph 49 of the complaint would put Defendants on notice that Plaintiff is raising a section 1981 claim of retaliatory termination. Further, the court finds that Defendants were on notice of Plaintiff's reading of Count Seven of the complaint as evidenced by the joint preliminary report and discovery schedule and the motion for summary judgment. Also, Defendants have not argued that Plaintiff has failed to raise a section 1981 retaliatory termination claim at any stage in the current proceeding despite being on notice that Plaintiff was raising such a claim. Because Defendants have failed to argue against a broad reading of Count Seven, Defendants have failed to show lack of notice of the broad interpretation, and Defendants have failed to show that they will suffer any prejudice should the court adopt the expansive reading of Count Seven, the court reads Count Seven of Plaintiff's complaint as including a claim for retaliatory termination under section 1981.

24

Having found that Plaintiff has stated a claim for retaliatory termination under section 1981, the court must decide if Defendants are entitled to summary judgment on such a claim. Defendants contend that there is nothing in section 1981 that provides for a cause of action for retaliation, and although some courts have interpreted section 1981 to provide a retaliation claim, they have done so in the context of the statute's focus -- racial discrimination in the making and enforcing of contracts.   As Plaintiff's retaliation claim does not relate to racial discrimination in the making and enforcing of a contract because Plaintiff was an at-will employee, Defendants contend they are entitled to summary judgment.

The court finds no merit in Defendants' argument.   In *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1411-13 (11th Cir. 1998), the Eleventh Circuit Court of Appeals established that the 1991 amendments to section 1981 include retaliation for complaining of race discrimination.   Also, Defendants cite no case law that finds that a retaliation claim is not available to at-will employees.   Several circuits have found that at-will employment contracts are considered "contracts" deserving of protection under section  1981.   *See Walker v. Abbott Laboratories*, 340 F.3d 471, 478 (7th Cir. 2003);  *Skinner v. Maritz, Inc.*, 253 F.3d 337, 342 (8th Cir. 2001); *Lauture v. Int'l Bus. Mach. Corp.*, 216 F.3d 258, 260 (2d Cir. 2000); *Perry v. Woodward,* 199 F.3d 1126, 1133 (10th Cir. 1999); *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018-19 (4th Cir. 1999);  *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.,* 160 F.3d 1048, 1051-52 (5th Cir. 1998).   Therefore, the court concludes that Plaintiff is not foreclosed from asserting a claim under section 1981 for retaliation.

25

The Eleventh Circuit has not precisely defined the contours of a section 1981 retaliation claim. *Tucker v. Talladega City Schools,* 171 Fed. Appx. 289, 296 (11th Cir. 2006) (unpublished opinion); *see also Bass v. Orange County Bd. of Commissioners,* 256 F.3d 1095, 1120, n. 10 (11th Cir. 2001) (noting uncertainty as to the elements of a § 1981 retaliation claim). As the Circuit Court previously explained, "the concerns underlying a retaliation action brought pursuant to Title VII and § 1981 might, in some circumstances, be different," particularly where the retaliation did not occur after a complaint of race discrimination. *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1463, n. 4 (11th Cir. 1998) (citing *Little v. United Tech.,* 103 F.3d 956 (11th Cir. 1997)).

In this case, however, Plaintiff's allegations *do* involve retaliation based on a complaint alleging race discrimination, specifically, retaliation based on Plaintiff's EEOC complaint alleging race and gender discrimination as well as retaliation. Moreover, Defendants present the retaliation claim under the Title VII framework. Therefore, this court will apply the Title VII retaliation framework to Plaintiff's section 1981 retaliatory termination claim. As the court has already found that, applying the Title VII burden-shifting framework, Defendants are not entitled to summary judgment on Plaintiff's Title VII claim of retaliatory termination, the court now finds that Defendants are not entitled to summary judgment on Plaintiff's retaliatory termination claim under section 1981. Therefore, the court DENIES Defendants' motion for summary judgment on Plaintiff's section 1981 claim of retaliatory termination.

**C.     Qualified Immunity - Defendant Hopkins**

26

Plaintiff contends that Magistrate Judge Brill erred in finding that Defendant Hopkins was entitled to qualified immunity. "So long as a government official acts within the scope of his discretionary authority and does not violate clearly established law, the doctrine of qualified immunity protects him." *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir. 1998) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982)). [T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Id.* The burden then shifts to the plaintiff to show that the individual defendant's conduct violated a clearly-established statutory or constitutional right. *E.g.*, *Grayden v. Rhodes,* 345 F.3d 1225, 1231 (11th Cir. 2003). The inquiry may be broken down into two parts: (1) whether the evidence, if believed, would establish a violation of the plaintiff's rights; and (2) whether those rights were clearly established at the time of the alleged deprivation. *E.g., id.*

The parties do not dispute that Defendant Hopkins was acting within the scope of his discretionary authority. Thus, the question for this court is whether Defendant Hopkins violated clearly-established law.

As noted above, the court has found that there is a genuine question of material fact as to whether Defendant Hopkins violated Plaintiff's section 1981 right to be free from retaliation. Further, the court finds that it was clearly established in this Circuit in *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1411-13 (11th Cir. 1998), that the 1991 amendments to section 1981 include retaliation for complaining of race discrimination.

27

*Tucker,* 171 Fed. Appx. at 295 (unpublished opinion) ("*Andrews* does establish that § 1981 encompasses a cause of action for retaliation.").     Several courts have found that an official who retaliates against an employee in violation of section 1981 is not entitled to qualified immunity.   *See e.g., Marshall v. Daleville City Bd. of Educ.*, 2006 WL 2056581 * 11 M.D. Ala., 2006.    ("An objectively reasonable public official, therefore, would have known that retaliating against an assistant superintendent for exercising her legal right to file an EEOC charge of discrimination was prohibited by law."); *McCann v. Mobile County Personnel Board,* 2006 WL 1867486, *15 (S.D. Ala. July 6, 2006) ("As *Andrews* was decided in 1998, the proposition that it is unlawful under Section 1981 to retaliate against an employee for complaining of race discrimination was clearly established when [Defendants] acted in early 2004."); *Foley v. University of Houston System,* 355 F.3d 333, 340 (5th Cir. 2003) (affirming denial of qualified immunity on a § 1981 retaliation claim).

The court finds that Plaintiff's right under section 1981 to be free from retaliation was clearly established when Defendant Hopkins terminated her on October 14, 2004.    Therefore, the court finds that Defendant Hopkins is not entitled to qualified immunity. Accordingly,  the court DENIES Defendants' motion for summary judgment with respect to Defendant Hopkins' claim of qualified immunity.

### D.     Failure to Promote

Finally, Plaintiff contends that Magistrate Judge Brill erred in recommending that this court grant Defendants' motion for summary judgment with respect to Plaintiff's section 1981 claim against Defendant Andrews in his individual capacity.

Specifically, in her objections to Magistrate Judge Brill's report and recommendation Plaintiff contends that Magistrate Judge Brill erroneously found that Defendant Andrews asserted that he felt that [Defendant] Hopkins was the most qualified candidate of all the people he had interviewed, given [Defendant] Hopkins' education, background, and experience including managing large organizations. Plaintiff contends that Defendant Andrews in his deposition testified that he has no recollection of the reasons why he selected Defendant Hopkins instead of the Plaintiff. Plaintiff also contends that Defendant Andrews does not recall any thoughts about the comparison of the two candidates and that he said that any attempt to do so today would be merely an "assumption" as to the reasons for his selection decision. Plaintiff argues that such an assumption cannot support a motion for summary judgment. In effect, Plaintiff contends that Defendant Andrews has not articulated a legitimate, non-discriminatory reason for choosing Defendant Hopkins over Plaintiff for the position of Director of General Services.[4]

---

[4] It is important to note that Plaintiff is not arguing that Defendants' offered reasons are a pretextual ruse; rather, Plaintiff is asserting that due to Defendant Andrews' alleged uncertainty, Defendants have failed to satisfy their burden of producing a legitimate, nondiscriminatory reason for the hiring of Defendant Hopkins instead of Plaintiff.

Once a plaintiff asserting a Title VII discrimination claim establishes her prima facie case against an employer, the employer then has the burden of producing evidence to establish "a legitimate, non-discriminatory reason for its actions." *Wilson,* 376 F.3d at 1087.    The employer's burden is "exceedingly light."    *Cooper,* 390 F.3d at 725 (internal quotation omitted).   The employer "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Id.*

Having read Defendant Andrews' deposition testimony, the court finds that Defendant Andrews has offered several legitimate, non-discriminatory reasons for hiring Defendant Hopkins over Plaintiff.  Specifically, the court found the following dialogue illuminating:

|  |  |
|---|---|
| Q | Is there anything you can tell me today about why you selected Mr. Hopkins for director of general services and not Ms. Forehand? |
| Defendant Andrews | I thought he was the better candidate. |
| Q | Can you tell me why? |
| Defendant Andrews | Based on experience, education, diversity of background, manager of large organizations. |
| Q | But you just told me you didn't recall how you had evaluated him or Ms. Forehand. |
| Defendant Andrews | You didn't ask me relative to the two of them.  You asked me if I had followed criteria with respect to each of those, if I ranked each on those criteria.  I did not. Obviously, I make comparison between all the candidates; and I thought Mr. Hopkins was the superior candidate amongst  the people I interviewed. |

30

| Q | In comparing Mr. Hopkins to Ms. Forehand, what was it about Mr. Hopkins that was superior to Ms. Forehand? |
|---|---|
| Defendant Andrews | Experience, education, management of a large organization, supervisory experience and diversity of background. |
| Q | So you felt in each of those categories that he was better qualified than Ms. Forehand? |
| Defendant Andrews | That's correct. |

Andrews Depo. at 39-40.

The court finds that this testimony offers legitimate, non-discriminatory reasons for the selection of Defendant Hopkins as Director of General Services instead of Plaintiff. Specifically, Defendant Andrews unequivocally states that Defendant Hopkins was superior to Plaintiff in experience, education, management of a large organization, supervision experience and diversity of background. The court finds this testimony sufficient to satisfy the exceedingly light burden of production placed on Defendants.

Defendants having satisfied their burden, the report notes that the onus is now on the Plaintiff to raise a genuine factual issue as to whether that proffered reason is merely a "pretextual ruse to mask a retaliatory action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997). As stated by Magistrate Judge Brill, Plaintiff has failed to satisfy this onus. Therefore, the court GRANTS Defendants' motion for summary judgment with regard to Plaintiff's claim against Defendant Andrews in his individual capacity.

31

**III.** **CONCLUSION**

The court GRANTS-IN-PART and DENIES-IN-PART Defendants' motion for summary

judgment [33].


**IT IS SO ORDERED** this 26th day of March 2007.


_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

32